UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 17-21251-CIV-WILLIAMS

JEANNY GARCIA OREILLY,

    Plaintiff,

vs.

THE ART OF FREEDOM INC. d/b/a
LA ESQUINA DE LA FAMA et al

    Defendants.
_____/

## ORDER

**THIS MATTER** is before the Court on Plaintiff Jenny Garcia O'Reilly's motion for partial summary judgment (DE 65) to which defendants, Brandon Baby Inc., Miguel Campos, Arlena Lopez and The Art of Freedom Inc. (collectively, "Defendants"), filed a response (DE 67) and Garcia O'Reilly filed a reply (DE 69).[1] For the reasons set forth below, the motion (DE 65) is **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

#### A. Facts

Between December 2016 and April 2017, Ms. Garcia O'Reilly worked as a server at a restaurant named "La Esquina de la Fama II." (DE 70 at 1-2; DE 64 ¶ 4). Defendant,

---

[1] The Court notes that Defendants failed to provide a statement of material facts in accordance with Local Rule 56.1. Pursuant to Local Rule 56.1, if a non-movant fails to controvert statements in the movant's statement of material facts, then "all material facts set forth in the movant's statement filed and supported as required [by the rule] will be deemed admitted [,] . . . provided that the Court finds the movant's statement is supported by evidence in the record." S.D. Fla. L. R. 56.1(b). Rather than deem Plaintiff's facts admitted, however, the Court will consider those facts identified in Defendant's response and readily supported by the record evidence.

Miguel Campos, who owns Brandon Baby Inc., d/b/a La Esquina de la Fama II, opened up the restaurant to build on the success of the Art of Freedom Inc., d/b/a/ La Esquina de la Fama ("AOF"), another restaurant managed by Mr. Campos and owned by defendant Arlena Lopez, Mr. Campos's fiancée. (DE 64 ¶¶ 20-25, 48; DE 67 ¶ 9; DE 64-13 at 26). Both restaurants share the same logos, uniforms and color schemes. (DE 64 ¶¶ 45-48). According to Ms. Garcia O'Reilly, both restaurants also shared employees. (DE 64-1 ¶¶ 24, 33). Ms. Garcia O'Reilly interviewed for the job with Mr. Campos, at the offices of AOF, at 1388 S.W. 8th Street, Miami, Florida. (DE 64 ¶¶ 1-3). Mr. Campos was Ms. Garcia O'Reilly's supervisor, instructed her on when and where to show up, and on the tasks she was to perform each day. (DE 64 ¶¶ 10-11). Although Mr. Campos usually paid Ms. Garcia O'Reilly in cash, on three occasions she received paychecks from AOF.[2] (DE 64 ¶ 14). One of those checks was signed by Ms. Lopez. (DE 64-12 at 17). According to Ms. Garcia O'Reilly, she stopped working at La Esquina de la Fama II, approximately, on April 22, 2017. (DE 43 ¶ 17).

## B. Procedural History

On April 4, 2017, Ms. Garcia O'Reilly filed a complaint against AOF and Ms. Lopez alleging that they had failed to pay her "tip credit," minimum and overtime wages in violation of the FLSA. (DE 1). On April 26, 2017, Ms. Garcia O'Reilly filed her statement of claim alleging unpaid wages of $9,844.80 and seeking an award of attorneys' fees of $2,520.88. (DE 9). On May 5, 2017, AOF and Ms. Lopez filed a motion to dismiss (with no accompanying memorandum of law) stating that Ms. Garcia O'Reilly had never worked

---

[2] Mr. Campos testified that those checks were issued by error. (DE 67 ¶ 14; DE 64-13 at 8).

2

for AOF, but rather she worked for Brandon Baby, a separate company. (DE 10). The Court denied the motion. (DE 13). On May 23, 2017, AOF and Ms. Lopez filed their Answer and Defenses asserting, among other things, that Ms. Garcia O'Reilly had sued the wrong parties, that she had been paid minimum and overtime wage and that neither AOF nor Ms. Lopez had claimed a tip credit for her. (DE 16). On August 23, 2017, AOF and Ms. Lopez filed an untimely response to Ms. Garcia O'Reilly's statement of claim stating that she worked for Brandon Baby and not AOF, and the checks she received from AOF were issued by mistake by the payroll administrator who worked for both AOF and Brandon Baby. (DE 27).

On December 15, 2017, Ms. Garcia O'Reilly moved for leave to amend her complaint to join Mr. Campos and Brandon Baby. (DE 30). After holding a hearing on the motion, the Court granted her leave to amend the complaint. (DE 42). On March 12, 2018, Ms. Garcia O'Reilly filed her amended complaint and on April 4, 2018, Defendants filed their answers. (DE 43; DE 50; DE 51). On April 26, 2018, Defendants filed amended answers. (DE 54; DE 55). On May 7, 2018, Ms. Garcia O'Reilly filed an amended statement of claim alleging unpaid wages of $9,844.80 and seeking an award of attorneys' fees of $29,185.63. (DE 58). Defendants responded denying that she is owed any money. (DE 59; DE 60). On May 15, 2018, Ms. Garcia O'Reilly filed the motion for partial summary judgment presently before the Court. (DE 65; DE 64). On June 19, 2018, Ms. Garcia O' Reilly filed a second amended statement of claim alleging unpaid wages of $6,356.80 and attorney's fees for $45,188.05. (DE 70). Defendants deny Ms. Garcia O'Reilly's claim. (DE 71).

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under the governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And any such dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the Court considers the evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008) (quotation marks and citations omitted). At the summary judgment stage, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

For issues for which the movant would bear the burden of proof at trial, the party seeking summary judgment "must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence...that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial,

4

no reasonable jury could find for the non-moving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993)(emphasis in original).

## II. DISCUSSION

Ms. Garcia O'Reilly asks the Court to find that (1) Defendants operated as a joint enterprise, making them subject to the requirements of the FLSA and the Florida Minimum Wage Act and (2) that Defendants were her joint employers, making them jointly and severally liable for minimum and overtime wages. The Court will address the two issues in turn.

### A. Joint Enterprise

Under the FLSA, a worker can sue two or more separate entities under a joint enterprise theory. *Donovan v. Easton Land & Dev., Inc.*, 723 F. 2d 1549, 1551 (11th Cir. 1984). The FLSA defines enterprise as follows:

> 'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed by such enterprise by an independent contractor....

29 U.S.C. § 203 (r). "The finding of an enterprise is relevant only to the issue of coverage" and not liability. *See Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir. 1986). Importantly, Congress included the enterprise analysis in the FLSA, "solely for the purpose of

5

expanding the scope of coverage of the statute." *Id.* "In order to establish joint enterprise coverage, a plaintiff must allege facts demonstrating that two or more businesses: (1) performed related activities, (2) through unified operation or common control, (3) for a common business purpose." *Dimingo v. Midnight Xpress, Inc.*, No. CV 17-23010-CIV, 2018 WL 770478, at *2 (S.D. Fla. Jan. 16, 2018).

In support of the joint enterprise theory, Ms. Garcia O'Reilly argues that Defendants engaged in the restaurant business under the name "La Esquina de la Fama," Mr. Campos managed both restaurants, Ms. Garcia O'Reilly received payments from both Brandon Baby and AOF and both restaurants shared logos, uniforms and color scheme. (DE 65 at 6). Additionally, Brandon Baby's registered corporate address from its inception until after the commencement of this lawsuit was the same address as AOF's. *Id.* These facts are sufficient to establish a joint enterprise. First, it is undisputed that Defendants were engaged in related activities. Defendants are in the restaurant business and, in fact, Mr. Campos admitted that he opened La Esquina de la Fama II to capitalize on the success of La Esquina de la Fama. (DE 64-13 at 26). *See Gonzalez v. Old Lisbon Restaurant & Bar L.L.C.*, 820 F. Supp. 2d 1365, 1369 (S.D. Fla. 2011) ("It is not difficult to allege that two employers performed related activities. Activities are related when they are the same or similar or when they are auxiliary and service activities.").

Second, the evidence also establishes that Defendants shared a common business purpose, which "encompasses activities directed to the same business objective or to similar objectives in which a group has an interest." *Id.* Indeed, other district courts have found a common business purpose were, as here, two adjoining restaurants considered themselves to be sister restaurants. *See Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d

6

632, 648 (N.D. Ill. 2007). In this case, the evidence shows that both restaurants had the same name, used the same logo, were managed by the same person and, at least for a period of time, shared the same corporate address.

Finally, the Court finds that the businesses were conducted through a unified operation. Mr. Campos managed both restaurants; Mr. Campos and Ms. Lopez jointly decided whether to hire and/or fire AOF employees; and Mr. Campos and Ms. Lopez jointly signed bank accounts and leases. Importantly, they shared names, address, logos and uniforms which shows that they "held [themselves] out to the public" as a collective unit. See Cornell v. CF Ctr., LLC, No. 09-14135-CIV, 2010 WL 11504485, at *5 (S.D. Fla. Feb. 4, 2010). Defendants' argument that Brandon Baby and AOF are separate companies with separate bank accounts is not dispositive because courts must "look beyond formalistic corporate separation to the actual pragmatic operation and control..." Cornell v. CF Ctr., LLC, 410 F. App'x 265, 267 (11th Cir. 2011) (finding joint enterprise despite the existence of separate tax identifications, banking accounts and tax returns). For these reasons, the Court finds that Defendants are a joint enterprise.[3]

### B. Joint Employment

"The case law treats the questions of enterprise and liability separately." Patel, 803 F.2d at 637. "Liability is based on the existence of an employer-employee relationship." Id. Therefore, the finding of a joint enterprise does not require a finding of joint employment liability: "under the plain words of the [FLSA] the criteria for establishing an enterprise are much broader than the criteria necessary for establishing liability." Id. at

---

[3] Additionally, although Defendants response states in conclusory fashion that genuine issues of fact exist as to joint enterprise, Defendants fail to advance facts or cite to a single case in support of their contention that no joint enterprise exists.

636. The FLSA provides that an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee ..." 29 U.S.C. § 203(d). "[T]o employ" means "to suffer or to permit to work." 29 U.S.C. § 203(d). To determine employment status, courts "must evaluate the economic realities of the individual case rather than rely upon traditional common law principles." *Beck v. Boce Group, L.C.*, 391 F. Supp. 2d 1183, 1186 (S.D. Fla. 2005). Although, the issue is whether the employee was economically dependent upon the putative employer, under the FLSA a worker can be dependent on, and thus jointly employed, by two or more separate entities. *Id.* at 1186-87.

Courts in the Eleventh Circuit consider the following factors to determine whether joint employment exists: (1) the nature and degree of control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the power to determine the pay rates or the methods of payment of the workers; (4) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; (5) the preparation of payroll and the payment of wages; (6) the ownership of the facilities where work occurred; (7) performance of a specialty job integral to the business; and (8) investment in equipment and facilities. *Downie v. BF Weston, LLC*, Case No.16-cv-60348-BLOOM, 2016 WL 6876493 at *2 (S.D. Fla. Nov. 17, 2016). Further, the Eleventh Circuit has articulated guidance for courts in the application of the above factors. *See Antenor v. D & S Farms*, 88 F.3d 925, 932 (11th Cir. 1996). First, the question in joint employment cases is not whether the worker is more economically dependent on one putative employer than the other because, under the statute, a worker can have more than one employer. *Id.* "The focus of each inquiry ... must be on each employment relationship as it exists between

8

the worker and the party asserted to be a joint employer." *Id.* Second, no one factor is determinative because the inquiry depends on the economic reality of all circumstances. *Id.* Third, because economic dependence determines employee status, the factors are just a guide to determine the degree of dependence between the worker and the employer. *Id.* Fourth, the factors are not to be weighed mathematically, since the absence of any number of factors does not preclude a finding of joint employment. *Id.* at 933. Fifth, court must focus on economic dependency and not common law concepts of employment. *Id.* Finally, the FLSA is a remedial statute that must be construed broadly. *Id.*

To support her theory of joint employment, Ms. Garcia O'Reilly relies on virtually the same evidence advanced for the joint enterprise analysis: (1) Ms. Garcia O'Reilly applied to work for La Esquina de la Fama; (2) Ms. Garcia O'Reilly inquired about a job at La Esquina de la Fama, at AOF's address, and was directed to speak to Mr. Campos; (3) Mr. Campos managed both restaurants, conducted interviews, hired and scheduled employees for both restaurants; (4) Ileana Valdes was only paid by AOF, but managed payroll for both restaurants; and (5) only Mr. Campos and Ms. Lopez had signatory authority for AOF's bank account. (DE 65 at 11). In response, Defendants argue that (1) the companies had separate ownership, separate bank accounts and separate locations; (2) Ms. Garcia O'Reilly never worked for AOF; (3) Ms. Lopez and AOF had no control over Brandon Baby or Ms. Garcia O'Reilly; (4) Mr. Campos covered Brandon Baby's expenses with his own money; and (5) the payments made to Ms. Garcia O'Reilly by AOF were made by mistake. (DE 67 at 3-4).

9

The Court finds that a genuine issue of fact exists as to whether Defendants were Ms. Garcia O'Reilly's joint employers. Ms. Garcia O'Reilly makes much of the fact that Mr. Campos manages both restaurants, including hiring, supervising and firing employees from both restaurants. But that argument misses the mark. There is no dispute that Mr. Campos was AOF's manager and that, with Brandon Baby, he was Ms. Garcia O'Reilly's employer. Rather, the inquiry is whether AOF and Ms. Lopez were also her employers. *Antenor*, 88 F.3d at 932 ("The focus of each inquiry ... must be on each employment relationship as it exists between the worker and the party asserted to be a joint employer."). And that inquiry is based on economic dependence. However, Ms. Garcia O'Reilly has not presented sufficient evidence showing that either AOF or Ms. Lopez exercised any degree of control or supervision over her activities. In fact, the record is devoid of evidence showing that Ms. Lopez or AOF had any right to hire, fire or modify the employment conditions of Brandon Baby workers, including determining pay rates or methods of payment.

The only evidence that Plaintiff can offer in support of her assertion that Defendants were joint employers, are the three paychecks she received from AOF. But Defendants have testified that those checks were issued by mistake. Mr. Campos also testified that he personally covered for all of Brandon Baby's expenses. Thus, Ms. Garcia O'Reilly has not established that she was economically dependent on AOF and Ms. Lopez.

Additionally, Ms. Garcia O'Reilly's reliance on *Hankerson v. Fort Lauderdale Scrap, Inc.*, No. 15-60785-CIV, 2016 WL 7508242, at *3 (S.D. Fla. Sept. 8, 2016) is misplaced. *Henkerson* involved two companies that had the same owner, same

10

manager, operated from the same physical location and shared employees. Moreover, it was undisputed that both companies had employed the plaintiff in that case. Here, while Ms. Garcia O'Reilly has been able to show some overlap between the Defendants, she has been unable to show how that overlap gave AOF or Ms. Lopez any control over Brandon Baby's employees. Nor has she offered sufficient proof to establish that she was economically dependent on Ms. Lopez or AOF. Rather than focusing on the relationship between the putative employers and herself, Ms. Garcia O'Reilly has advanced facts that focus on the relationship between Mr. Campos and AOF. For these reasons, the Court finds that there is an issue of fact as to whether Defendants are joint employers under the FLSA.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Ms. Garcia O'Reilly's motion for partial summary judgment (DE 65) is **GRANTED IN PART AND DENIED IN PART.**

**DONE AND ORDERED** in chambers in Miami, Florida, this 9th day of July 2018.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE